### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOLETA M. MOTT, on behalf of herself and all others similarly situated, | ) | **CLASS ACTION** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C. A. No. 12-1292** |
| | ) | |
| STONECREST MANAGERS and JON O. FREEMAN, | ) ) ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

For the reasons set forth in the accompanying Memorandum of Law, Plaintiff Loleta M. Mott hereby seeks final approval of the class action settlement preliminarily approved by this Court by Order dated November 13, 2012 (Doc. 104).

Dated: April 8, 2013   Respectfully Submitted,

          **FRANCIS & MAILMAN, P.C.**
BY: *s/ David A. Searles*
          JAMES A. FRANCIS, ESQUIRE
          DAVID A. SEARLES, ESQUIRE
          100 South Broad Street, 19th Floor
          Philadelphia, PA 19110
          (215) 735-8600

          Attorneys for Plaintiff and Class

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOLETA M. MOTT, on behalf of herself and all others similarly situated, | ) ) | CLASS ACTION |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 12-1292 |
| | ) | |
| STONECREST MANAGERS and JON O. FREEMAN, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT
AND  CERTIFICATION OF A SETTLEMENT CLASS

I.     **INTRODUCTION**

Plaintiff Loleta M. Mott (the "Representative Plaintiff"), by her undersigned counsel, respectfully submits this Memorandum of Law in support of her Motion for Final Approval of the proposed settlement with Defendants Stonecrest Managers and Jon O. Freeman as embodied in the Settlement Agreement submitted on November 27, 2012, and certification of a Settlement Class.[1]  As discussed herein, the proposed settlement provides comprehensive relief for the Class and meets all of the standards for settlement approval under Rule 23(e).  It should, therefore, be granted final approval as fair, reasonable and adequate as to all class members.

This Court conditionally certified a Settlement Class[2] and preliminarily approved this settlement on December 18, 2012 (Doc. 21).  Pursuant to the Preliminary Approval Order, notice

---

[1]     Plaintiff has simultaneously moved for an award of attorney's fees and costs, and for an individual settlement award for Plaintiff as Class Representative.

[2]     The Settlement Agreement provided for, and the Court has preliminarily approved, a Settlement Class defined as: "All homeowners to whom Defendants Stonecrest and Freeman

of the pendency of this action, the terms of the proposed settlement, the opportunity to opt out, object or participate, and the date of the April 18, 2013 final approval hearing, was provided to 440 individuals by first class mail on January 18, 2013.  *See* Affidavit in Connection with Notice (Doc. 22-1).

The settlement represents a fair and reasonable resolution for the Class for various reasons.  First, in a consumer class action brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (FDCPA), which is remedial in nature, the settlement achieves significant practice changes by Defendants that will benefit American homeowners in the future. This lawsuit has resulted in practice changes by the Defendant which will correct the misrepresentations alleged by Plaintiff in the litigation.

Second, the settlement provides economic relief to Settlement Class members in almost the maximum amount permitted by the FDCPA if the Plaintiff prevailed at trial.

Third, the settlement is for statutory damages only under the FDCPA.  The settlement specifically excludes Class members' actual damages claims, if any, from the release.  This leaves Class members free to pursue such claims if they so desire.

Fourth, the deadline for requesting exclusions and for objections was March 28, 2013. As of the deadline, no members of the Class had either objected or submitted exclusion requests. This factor indicates a fair settlement.

For these reasons and for the reasons set forth in greater detail below, the settlement is fair, reasonable and adequate to the Settlement Class and satisfies all of the criteria that courts routinely apply for the approval of class action settlements.  *See, e.g., In Re Prudential Insurance*

---

have sent a letter substantially in the form attached to the Complaint as Exhibit A to the Complaint."  Doc. 21.

*Company of America Sales Litigation*, 148 F.3d 283 (3d Cir. 1998); *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

II.     **NATURE AND HISTORY OF THE LITIGATION**

Ms. Mott filed this consumer class action on March 13, 2012 (Doc. 1) against Defendants Stonecrest Managers[3] and Jon O. Freeman.  The action y asserted claims for violation of the FDCPA and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1, *et seq.* ("CPL").   The Complaint alleged that Defendants violated these laws by delivering to consumers, who were allegedly in default on their residential mortgage, a false, deceptive and misleading form collection letter that stated, inaccurately, as follows:

> Stonecrest is the new owner of the property in which you are currently residing and they have requested this letter to be hand-delivered to your residence.
>
> In order to present you with your rental options or alternatives, please contact our Account Representative at Stonecrest using the contact number provided below:
>
> Account Representative: John Hope
> Toll-free phone number: 800-557-7720 ext. 212
>
> Thank you,
>
> Jon O. Freeman
> Stonecrest Income & Opportunity Fund I, LLC

*See* Exhibit A to Complaint.

Defendants filed Answers to the Complaint on June 5, 2012.  Following service of the Complaint, defense counsel contacted plaintiff counsel and settlement negotiations commenced soon thereafter.  The parties participated in several pre-trial telephone conferences with the Court, during which they advised the Court of the ongoing settlement talks.  Plaintiff propounded written discovery on June 29, 2012, and begin obtaining information that assisted in reaching a

---

[3]     The action originally named Stonecrest Income & Opportunity Fund I, LLC as defendant, and the parties stipulated to the change of name following discovery.  Doc. 20.

resolution.  In a telephone conference on August 27, 2012, the parties notified the Court that they had reached an agreement in principle for settlement of the case on a class basis, subject to confirmatory discovery on several issues.   The Court then entered an Order (Doc. 17) requiring that any motion for preliminary approval of the settlement be filed by December 3, 2012.

Thereafter, the Defendants produced further information in response to the discovery requests, and Plaintiff took the deposition of Defendants' operations manager.  Following six months of negotiations, the parties agreed to a documented settlement agreement, which was filed along with a Motion for Preliminary Approval on November 27, 2012 (Doc. 19).  The Court thereafter granted preliminary approval of the settlement (Doc. 21) and scheduled a hearing to consider final approval of the settlement for April 18, 2013.

### III.   SUMMARY OF THE SETTLEMENT

The essential terms of the settlement preliminarily approved by this Court by Order entered December 18, 2012 are set out in the Settlement Agreement attached to the Motion for Preliminary Approval.  The settlement is fair, adequate and reasonable in light of the relevant facts, the applicable law, and the value of the settlement, economic, as well as non-economic, to the Class.

### A.   Settlement Benefits

The Settlement Agreement confirms the equitable relief of the cessation of the collection letter at issue and also provides compensatory relief in the amount roughly equal to one percent (1%) of Defendant's net worth,[4] distributed equally among the class membership.  The sum of $30,000 shall be distributed equally among the 440 members of the Class for whom the Settlement Administrator has current addresses, or approximately $68.18 each.

---

[4]     *See* 15 U.S.C. § 1692k(a)(2)(B)(ii), limiting statutory damages in class actions to one percent of a defendant debt collector's net worth.

**B.** **Costs of Notice.**

The Defendants have or will pay all costs associated with notice and settlement administration, as set forth in the Settlement Agreement.

**C.** **Service Award for Class Representative.**

Subject to the Court's approval, the parties have agreed that the representative Plaintiff, Ms. Mott, will be paid an individual settlement award of $3,250.00 by the Defendants for her individual claims and for her services in connection with representing the Class.

**D.** **Attorneys' Fees and Costs.**

Plaintiff has simultaneously filed today a motion seeking payment of her counsel fees and costs under the fee-shifting provisions of the FDCPA, 15 U.S.C. § 1692k(a)(3). As set forth therein, while counsel's lodestar for time is in excess of $54,000, Plaintiff is seeking the lesser amount of $40,000 in fees, plus $572.71 in expenses. Defendants have agreed to pay the sum of $40,000.00 for fees, upon approval by the Court. Doc. 23. This payment will in no way affect the benefits to be distributed to the Settlement Class members. The amount of attorneys' fees and expenses to be paid to Class Counsel was not agreed to by the parties until well after agreement was reached on the other terms of the Settlement Agreement.

**IV.** **ELEMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS**

When the Court preliminarily approved this settlement, it considered whether the settlement class could be conditionally certified for settlement purposes. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23). As final approval of the settlement also involves the determination that certification of the Settlement Class is appropriate, the analysis applies again at this juncture.

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions. One or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  In support of her contention that proper and sufficient grounds for class certification exist under Rule 23, Plaintiff would show the following:

### A.  Numerosity

Plaintiff asserts that the members of the Settlement Class are so numerous that joinder of all members is impracticable.  According to the records produced by Defendants to the Settlement Administrator, and following an address updating procedure, including the removal of duplicate records, it appears that the Settlement Class consists of 440 members around the country.  *See* Doc. 22-1 at ¶¶ 4-6.  This number is such that joinder of all members is not practicable.

### B.  Commonality

Plaintiff also asserts that there are questions of law or fact common to the Class.  The main question is whether the collection letter violated the FDCPA.  The Complaint alleges a series of violations stemming from the letter.  *See* Complaint, ¶ 31.

Cases presenting standardized debt collection practices directed at consumers invariably present common predominating issues.  *See Weiss v. Regal Collections*, 385 F.3d 337, 344-45 (3d Cir. 2004) (claims arising from statements contained in standard collection communications particularly appropriate for class action); *Perry v. FleetBoston Financial Corp.,* 229 F.R.D. 105 (E.D. Pa. 2005) (finding Rule 23 requirements met in consumer class action and noting cases

routinely certified where 'defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents'") (citing cases).   Where, as here, a defendant engaged in standardized conduct toward putative class members, commonality is satisfied.   *In re Prudential Insurance Company America Sales Practice Litigation*, 148 F.3d at 310.

### C.   Typicality

This requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Prudential*, 148 F.3d at 311.   The threshold for establishing typicality is low. Typicality does not require that the claims of the class members be identical.   *Eisenberg v. Gagnon*, 766 F.2d at 786.   Rather, a plaintiff's claims are typical when the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his personal claims he can reasonably be expected to advance the interests of absent class members.   *See, e.g., General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 156-157 (1982); *see also* H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS (4th ed. 2002) at § 3.13.

Plaintiff received the same form collection letter, has the same interest in resolution of the issues as all other members of the Class and her claims are typical of all members of the Class.    These facts, and Plaintiff's claims, are therefore typical of the facts and claims of all other members of the proposed Settlement Class.   *See Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1998).

### D.   Adequacy of Representation

A representative plaintiff must be able to provide fair and adequate protection for the interests of the class.   That protection involves two factors: (a) the representative plaintiff's

attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the class. *See, e.g., In re Prudential*, 148 F.3d at 312; *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982).

Plaintiff fairly and adequately represents the interests of the Settlement Class. Plaintiff's attorneys have substantial experience in class action and consumer litigation and are qualified to conduct the litigation. *Perry, supra* (court finding that "I and a number of my colleagues have previously found that class counsel Francis & Mailman, P.C. and Donovan Searles LLC, possesses the skill, experience and qualifications necessary to conduct litigation similar to the present lawsuit. "). 229 F.R.D. at 112-13 (citations omitted). A recent decision from the District of Maine held the same. *LaRocque v. TRS Recovery Services, Inc.,* 2012 WL 2921191 (D. Me. July 17, 2012). *See also* cases cited at p. 8 of Motion for Preliminary Approval.

### E.    Rule 23(b)(3) Considerations

The proposed settlement contemplates a class certification permitting opt-outs pursuant to Rule 23(b)(3). An action may be maintained as a class action if the four elements described above are satisfied, and in addition, certain other conditions under Rule 23(b)(3) are met:

> (3)    the Court finds that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a Class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

The requirement that the questions of law or fact common to all members of the Class predominate over questions pertaining to individual members is normally satisfied where plaintiffs have alleged a common course of conduct on the part of the defendant. *Prudential*, 148 F.3d at 314-315.

Plaintiff has alleged such a common course of conduct by Defendants. Class members

8

were all sent the same form collection letter.  The predominating and dispositive issue is whether Defendants violated the FDCPA by engaging in this practice.

A class action in this case is superior to other available methods for the fair and efficient adjudication of the controversy because a class resolution of the issues described above outweighs the difficulties in management of separate and individual claims and allows access to the courts for those who might not gain such access standing alone, particularly in light of the relatively small amount of the actual and statutory damage claims that would be available to individuals.  In numerous cases, courts have recognized that Rule 23(b)(3) certification is particularly appropriate for consumer claims such as those asserted here.  *See*, *e.g., Amchem*, 521 U.S. at 617 ("The policy of the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").  Moreover, such a certification permits individual claimants to opt-out and pursue their own actions separately if they believe they can recover more in an individual suit.

Thus, both predominance and superiority are satisfied.

Solely for the purposes of settlement, Defendants do not dispute that the Class should be certified in accordance with Rule 23(b)(3). Accordingly, the Court should certify the Class for settlement purposes.

## V.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

When a proposed class-wide settlement is reached, it must be submitted to the court for approval. NEWBERG at § 11.24.  Preliminary approval is the first of three steps that comprise the approval procedure for settlement of a class action.  The second step is the dissemination of notice of the settlement to all class members.  The third step is a settlement approval hearing.

*See* MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.63 (2004), *available at* http://www.fjc.gov/public/pdf.nsf/lookup/mcl4.pdf/$file/mcl4.pdf.  The first two steps have been completed.

The question presented on a motion for final approval of a proposed class action settlement is whether the proposed settlement is fair in light of the following factors:

> (1) the complexity, expense and likely duration of the litigation;(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation…

*Girsh*, 521 F.2d at 157; *Prudential*, 148 F.3d at 317.

Trial courts generally are afforded broad discretion in determining whether to approve a proposed class action settlement.  *See Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995); *Girsh v. Jepson, supra*.

Thus, this Court is now asked to ascertain whether the proposed settlement is within a "range of reasonableness" which experienced attorneys could accept in light of the relevant risks of the litigation.  *See Walsh v. Great Atlantic and Pacific Tea Co.*, 96 F.R.D. 632, 642 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983).  In determining what falls within this range, the Court should bear in mind "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . ."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, courts have consistently held that the function of a judge reviewing a settlement is neither to rewrite the settlement agreement reached by the parties nor to try the case by resolving

the issues intentionally left unresolved.  *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 804 (3d Cir. 1974); *see also Officers for Justice v. Civil Service Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *Grunin v. International House of Pancakes*, 513 F.2d 114, 123-24 (8th Cir. 1975).  A settlement represents the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither side chooses to risk taking to final resolution.  Courts, therefore, have given considerable weight to the views of experienced counsel as to the merits of a settlement.  *See Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class").

Here, experienced counsel firmly believes that the settlement, as structured and contemplated by the parties, represents an educated and eminently reasonable resolution of the dispute.  An evaluation of the relevant factors demonstrates that the settlement fits well within the range of reasonableness and should be approved.

### A.    The Complexity, Expense And Likely Duration Of The Litigation

Absent the settlement, the parties would have to proceed with further discovery, a motion for class certification, probably summary judgment proceedings and ultimately, perhaps to trial. While the Representative Plaintiff believes she would prevail on all issues, there is at least some risk she would not.

Even if Plaintiff were to prevail on class certification and then successfully defeat a motion for summary judgment, a lengthy and expensive trial would most likely ensue.  Trial preparation on both sides would be necessary and a jury trial would eventually be before the Court.  It would be unrealistic not to expect appeals from any result reached.  Avoidance of this unnecessary expenditure of time and resources clearly benefits all parties.  *See In re General*

*Motors Pick-Up Trust Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and ardent opposition from the defendant with "a plethora of pretrial motions" were facts favoring settlement, which offers immediate benefits and avoids delay and expense).

      **B.**      <u>The Reaction Of The Class To The Settlement</u>

As set forth above, notice has been directly mailed to members of the Settlement Class advising them of the terms of the settlement and their right to exclude themselves from the Class. The deadline for Class members to exclude themselves and to object was March 28, 2013.  As of this date, no Class member has timely exercised the right to opt out and not one Class member has objected to the proposed settlement.  This is convincing evidence of the proposed settlement's fairness and adequacy.  *See Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-119 (3d Cir. 1990) ("only" 29 objections in 281 member class "strongly favors settlement"); *In re Prudential*, 148 F.3d at 318 (affirming conclusion that class reaction was favorable where 19,000 policyholders out of 8 million opted out and 300 objected).

      **C.**      <u>The Stage Of The Proceedings And The Amount Of Discovery Completed</u>

This action was not extensively litigated.  Defendants ceased using the collection letter at issue shortly after being served with the Complaint and they approached Plaintiff concerning a possible settlement early in the case.  The parties proceeded to engage in extensive arms-length negotiations.  The Court was kept apprised of the parties' efforts through a series of telephone conferences.  The settlement negotiations were adversarial and somewhat protracted, but eventually the parties were able to inform the Court they had reached an agreement in principle to settle, contingent on confirmatory discovery.  That discovery was completed, and the parties formally sought preliminary approval of a settlement about ten months after the case was filed.

Thus, the final settlement occurred only after the parties were able to assess its fairness adequately.  As a result of the parties' efforts, the litigation had reached the stage where "the parties certainly [had] a clear view of the strengths and weaknesses of their cases."  *Bonett v. Education Debt Services, Inc.*, 2003 WL 21658267, *6 (E.D. Pa. 2003), quoting *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

### D.      The Risks Of Establishing Liability

The risk of establishing liability is another important factor warranting final approval of the settlement.  To prevail at trial, Plaintiff would need to succeed on her claims that the Defendants' actions violated the FDCPA.  Defendants deny that they have committed any wrongful acts or violations of law or that they have any liability to the Plaintiff or the Class.

While Plaintiff strongly believes that the Defendant's activity violated the law as set forth in the Complaint, she recognizes the risk that the Court or a jury might not make that finding. Although Plaintiff was prepared to take on these burdens, the risks she faced were not insignificant.

### E.      The Risks Of Establishing Damages

Even if Plaintiff were to overcome the liability obstacles, there are also risks in proving damages, which Plaintiff has avoided by virtue of the proposed settlement.  The determination of damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting opinions.  In this case, Plaintiff and the members of the Class were seeking the maximum possible award of statutory damages under the FDCPA, 15 U.S.C. § 1692k(a)(2)(B)(ii).

Under section 1692k(a)(2)(B)(ii) of the FDCPA, the most Plaintiff could have won at trial would be one percent of the Defendants' combined net worth. Here, financial documents and deposition testimony showed that Defendant Stonecrest's net worth was approximately $1,743,035 and Defendant Freeman's approximately $1,500,000. Taken together, one percent of the combined net worths is $32,430, or slightly more than the $30,000 settlement payment agreed to be paid to the Class, which Plaintiff believes to be a very good result in light of the risks in having to prove statutory damages in a trial. It is by no means certain that both Defendants would have been found liable for the FDCPA violations asserted. Deposition testimony was that Mr. Freeman did not sign the collection letter and that he had no knowledge such a letter was even being used.

Moreover, Defendants would undoubtedly try to argue at trial that only one defendant debt collector's net worth would be part of the statutory damages calculus because there was only one letter violation.[5]   And simply prevailing on liability would not necessarily result in an award to the Plaintiff and the Class of the full amount of statutory damages allowable under the statute. Presumably, the Court or jury would take into account various factors in assessing an appropriate statutory damage award, such as frequency and persistence of noncompliance, nature of noncompliance, resources of the defendant, the number of persons adversely affected and the degree to which the noncompliance was intentional. 15 U.S.C. § 1692k(b)(2). Consequently, it is by no means certain, notwithstanding the egregiousness of the letter at issue, that Plaintiff would have achieved the maximum statutory damages award from this Court, even after proving liability.

---

[5]    *But see* section 1692k(a) ("… *any* debt collector who fails to comply with *any* provision of this subchapter with respect to *any* person is liable to such person….") (emphasis added).

In addition to the monetary relief, Defendants have stopped using the collection letter at issue, which will benefit for more persons than are in the Settlement Class.

**F.        The Risks Of Maintaining The Class Action Through Trial**

The settlement here comes before a ruling by the Court on Plaintiff's request for class certification.  It is expected that Defendants would vigorously oppose certification, and even if class certification were granted, possibly pursue an interlocutory appeal under Rule 23(f).

Alternatively, even if the case were certified, it is likely that Defendants would seek decertification, either before trial, during trial or on appeal.  *See Saunders v. Berks Credit and Collections*, 2002 WL 1497374, *12 (E.D. Pa. July 11, 2002).   While the success of such attempts is uncertain at best, the settlement allows Plaintiff to avoid the delay and expense that would be associated with such proceedings.

**G.        The Ability Of The Defendants To Withstand A Greater Judgment**

Because the settlement amount is close to the statutory cap, whether Defendants are able to withstand a greater judgment is not relevant.  As such, this factor is neutral.

**H.        The Range Of Reasonableness Of The Settlement In Light Of The
            Best Possible Recovery**

In light of the questions of fact and law present in this litigation, the value of the proposed settlement substantially outweighs the mere possibility of future relief.  The expense of a trial and the use of judicial resources and the resources of the parties would have been substantial.  Moreover, in light of the contested liability, it would not be unusual that any judgment entered would have been the subject of post-trial motions and appeals, further prolonging the litigation and reducing the value of any recovery.  Thus, a settlement is advantageous to all concerned.  An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself. *See Backman v. Polaroid Corp.*, 910 F.2d 10 (1st

Cir. 1990) (class won a jury verdict and a motion for judgment N.O.V. was denied, but on appeal

the judgment was reversed and the case dismissed); *Berkey Photo, Inc. v. Eastman Kodak Co.*,

603 F.2d 263 (2d Cir. 1979) (reversal of multimillion dollar judgment obtained after protracted

trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478, 485 (S.D.N.Y. 1970), *modified*,

449 F.2d 51 (2d Cir. 1971), *rev'd* 409 U.S. 363, 366 (1973) ($145 million judgment overturned

after years of litigation and appeals).

     While Plaintiff is confident of her ability to prevail at trial, no final adjudication has been

made as to the validity of her claims.  Plaintiff also recognizes that Defendants have continued to

deny all liability and allegations of wrongdoing and that Plaintiff's claims could have been

dismissed in connection with dispositive motions which would likely be filed, were the case to

continue.  In *In re Greenwich Pharmaceutical Securities Litigation*, 1995 WL 251293 (E.D. Pa.

April 26, 1995), the court held in finding a $4.3 million settlement within the range of

reasonableness where plaintiff's estimate of damages was $100 million:

> [P]laintiffs' most optimal estimate must be tempered by Defendants' repeated and
> vigorous claim of no damages.  When the probability of success at trial is factored
> into the equation, the settlement is obviously "within the range of
> reasonableness."

*See also, In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000) (approval of

settlement that provided 5.2% of best possible recovery).

     Through the proposed settlement, Plaintiff has obtained very close to the maximum

benefit for the Class available under the FDCPA.  Moreover, through the practice changes that

Plaintiff's lawsuit triggered, Plaintiff has achieved what essentially acts as a settlement

injunction prohibiting the Defendant from making the same misrepresentations in the future.

This settlement allows Plaintiff to avoid the risks described above and ensures an immediate

benefit to the Class.   Plaintiff believes the proposed settlement is well within the range of reasonableness and should be approved.

      **I.**      **The Range Of Reasonableness Of The Settlement To A**
                    **Possible Recovery In Light Of All The Attendant Risks Of Litigation**

      Essentially, this factor is an amalgam of the analysis described above.   When the risks of liability and damages are considered in light of the total potential recovery, this settlement is an excellent result for the Class.

**VI.**      <u>**CONCLUSION**</u>

      For the foregoing reasons, the settlement should be finally approved.

Dated:  April 8, 2013                    Respectfully submitted,

                                  **FRANCIS & MAILMAN, P.C.**

                                  */s/ David A. Searles*
                                  JAMES A. FRANCIS
                                  DAVID A. SEARLES
                                  100 South Broad Street, 19th Floor
                                  Philadelphia, PA 19110
                                  (215) 735-8600

## **CERTIFICATE OF SERVICE**

I do hereby certify that, on this date, I caused a true and correct copy of the foregoing Motion to be served via the Court's ECF Notification system upon the following counsel of record:

Richard J. Perr, Esquire
FINEMAN, KREKSTEIN & HARRIS, P.C.
Mellon Bank Building
1735 Market Street, Suite 600
Philadelphia, PA 19103
215-893-8724

_/s/ David A. Searles_____

Dated:  April 8, 2013